# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BARBARA JEAN DENNIS,

    Defendant.

Case No. 2:10-CR-00091-KJD-GWF

**ORDER**

    Presently before the Court is Defendant's Follow Up on Sentencing Hearing Prior to Final Judgment per Judge's Authorization [Restitution] (## 349, 350, and 351).

**Restitution**

    The Court held a sentencing hearing for Defendant on September 20, 2016 during which, Defendant objected to, among other things, the proposed restitution amount. Her objection was based on the argument that AHMSI, the named victim for the purposes of restitution, was not a victim. According to Defendant, AHMSI, the former servicing company for HSBC Bank, did not suffer any economic loss from Defendant's bankruptcy fraud, and therefore can not receive restitution.

    In its reply to its sentencing memorandum (#337) and during Defendant's sentencing hearing, the Government pointed to evidence of Defendant's own petitions filed in her several bankruptcy proceedings where AHMSI is listed as a creditor with a specific monetary claim.

    Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. 18 U.S.C.A. § 3664(e). The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. Id.; see also United States v. Tsosie, 639 F.3d 1213, 1222 (9th Cir. 2011) ("[W]hen there is a dispute

as to restitution, a restitution order must be supported by evidence in the record showing that it is more likely than not that the defendant's offense proximately caused the losses for which restitution was awarded and that it did so in the amounts awarded.").

In its sentencing memorandum, the Government originally calculated the restitution amount to be $215,000 (the unpaid value on the loan when defendant began her fraudulent activity, $300,000 less the value of the property at the time the lender took control of the property, $85,000). The Government then produced a revised sentencing memorandum that offered an alternative restitution calculation regarding the Belhaven property. Here, the calculation is based on the market value of the property, as assessed by Defendant in her initial bankruptcy petition, $150,000, less the amount the bank received in its subsequent foreclosure sale, $85,500. Further, Defendant is responsible for all rental income on the subject property during the course of the fraud, which amounts to $17,500. Thus, the revised restitution amount is $82,000. To the extent that Defendant refutes this restitution amount, it should be noted that, in her signed plea agreement, she stipulated to a loss amount ranging from $150,000 to $250,000 as a result of her bankruptcy fraud. Further, pursuant to the plea agreement, Defendant acknowledged that she had adequate time to discuss this case, the evidence, and the plea agreement with her stand-by counsel.

Attached to Defendant's Motion are exhibits, one of which is a letter from FBN Financial showing one payment of $1,047.59 which was paid to AHMSI toward the Belhaven property at the time of Defendant's bankruptcy. The Court notes this and deducts this payment from the revised restitution amount. Therefore, the restitution amount is $80,952.41.

Here, the Government has met its burden of proof by the preponderance of the evidence that AHMSI is a victim. The calculation put forth by the Government for restitution is based on the values attached to AHMSI's interest in the subject property by the defendant herself in her bankruptcy petitions, which she signed under penalty of perjury. (#337). Further, the revised calculation submitted by the Government accomplishes what is contemplated by the Ninth Circuit in

bankruptcy fraud cases: compares what actually happened with would have happened if [the bankruptcy petitioner] had acted lawfully. Id.

**Supervised Release**

According to Defendant, the parties intended there to be no supervised release. However, the plea agreement states that although the parties agreed that Defendant not receive a period of supervision following her incarceration, "[D]efendant acknowledges that the Court does not have to follow this recommendation." Thus, Defendant acknowledged in her signed plea agreement that the agreement does not bind the Court in following the recommendation of the parties. Additionally, the Presentence Investigation Report dated April 18, 2016, recommends a term of supervised release due to Defendant's "lack of compliance and lack of remorse...to ensure that she does not continue to recidivate in the future." Finally, because Defendant has assets and has stated her intention to leave the United States, a period of supervised release will also assist in payment of the applicable fine and recouping the losses associated with her fraud.

Accordingly, the Court denies Defendant's Motion.

**IT IS THEREFORE ORDERED** that Defendant's Follow Up on Sentencing Hearing Prior to Final Judgment per Judge's Authorization [Restitution] (## 349, 350, and 351) is **denied**;

**IT IS FURTHER ORDERED** that Defendant's restitution amount is reduced to $80,952.41.

**IT IS SO ORDERED**.

DATED this 29th day of September 2016.

                                             _____
                                             Kent J. Dawson
                                             United States District Judge

3